Good morning. I'm ready to call our first case, Guidotti v. Legal Helpers, debt resolution. Mr. Pelzer. Good morning. May it please the Court, my name is John Pelzer, here today representing the appellants Global and Rocky Mountain Bank. I would, with the Court's permission, like to reserve four minutes for rebuttal. All right. The primary question in this case is whether the plaintiff should be required to arbitrate her claims in accordance with the arbitration clause found in the AADS, Account Agreement and Disclosure Statement. And the factual issue that the plaintiff raised there was whether or not she actually had the AADS in her possession at the time she signed the application that incorporated the AADS. And if she didn't? If she did not, then I would say, Your Honor, not only was it expressly incorporated by reference, but she accepted it by her performance and by her... The electronic signing? Well, the electronic signing was, in fact, I would say, her accepting the agreement in the first instance, because the evidence shows that she did, in fact, have the AADS in her possession at the time she did the electronic signing. It was emailed to her twice... Will you re-reply me again? She had the... She had the AADS in her possession at the time she signed... What's the evidence that she had it? I thought the evidence was that Eclipse, or... It was Eclipse, yes. You sent it to DocuSign, and there's no evidence. Is there that DocuSign then got it to her? I thought that was what the dispute was. Actually, the evidence is that it was emailed to her twice on two different dates for a total of four times, on November 21st and then later on November 28th. On both of those dates, Eclipse sent the entire package. How do we know that Eclipse sent the entire package? Because Eclipse testified in deposition on remand here. So, because they said it, that's an established fact? We're talking about whether there's a disputed fact, right? She said she didn't get it. You said, we did get it. Isn't that the definition of a disputed fact? And if that's the case, Your Honor, if you want to bring it down to the last point on this particular argument, in this Court's prior opinion in this case, you stated that if there was a disputed issue of fact on the issue of whether an arbitration agreement was made, then under the FAA, the remedy is to grant an evidentiary hearing. Here, the District Court, in its opinion, frankly misstated that rule of law, and said that if there's not sufficient evidence to grant the summary judgment on arbitration, or arbitration motion on a summary judgment standard, then the motion should be denied. So you're relying on Section 4 of the FAA, and now you want to go back? If we find that there's a genuine dispute, we should go back? Yes, Your Honor. We should go to Section 4? Yes, Your Honor. First, I would say that the evidence would support, on a summary judgment standard, granting the arbitration motion, because we do have the sentence. I'm lost with you. I'm not following you on that. If you say, we sent, Eclipse sent it, and they said, we never got it, how do you meet the summary judgment standard? Actually, what she said, what she doesn't remember ever getting it. Her lapse of memory is not sufficient to create an issue of fact. And all we have in contradiction to this affirmative evidence that it was sent, and according to formal business procedures, and according to the log that was, it's reproduced at pages 555 and 556. We've got the record. When you say that's all there is, that seems to blow past the page count from the DocuSign ledger about the documents that you sent. That seems to blow past the assertion that Ms. Kelly makes when she's talking about what she did on behalf of Eclipse. She talks about the agreement. It appears she's speaking about the SPRA and not the AADS. If one reads that in context, an argument can certainly be made to that effect. It seems to blow past the lack of the header showing, you know, I guess if you're conceding that you didn't send it and your whole case is hinged on whether Eclipse sent it or not, it just seems I'm not sure why you're fighting so hard to try to claim you've got an undisputed fact, particularly when you've got the fallback argument you've got, which is we ought to at least get a hearing. I'm happy with the fallback argument, Your Honor. I'd prefer not to go back for a remand, but if that's what we have to do, that's what we have to do. But as to the DocuSign issue, the record also contains the affidavit of DocuSign's general counsel, who stated that their program does not automatically print a header on the top of every document they send. Either way, isn't it true the district court did not make a definitive ruling on these matters we've been discussing?  We're in the business of reviewing judgments and orders and findings of district courts, so it would seem to be a nonstarter, even if you may be right on some of these points. Doesn't prudence require that we allow the district court the first opportunity to make a complete record and tell us its reasoning? Certainly, Your Honor. It's, I would say, more parsimonious, to put it a different way, to simply do the remand and allow the district court to do that, to make that record, and I would suggest to you that that is certainly required here when the court twice finds that this is just a fact. When you say it's required, that of course ignores the district court's determination that there has been a statement, a clarifying statement of New Jersey law which ought to control. So why don't you turn to Adley? Thank you, Your Honor. We recognize you're saying that it's not, you know, it somehow runs afoul of conception, but the New Jersey Supreme Court itself took that on and listed a whole, I don't know, I didn't count them up, what, eight, ten different categories of cases where they said this isn't arbitration specific or assertion that you've got to have a clear and express waiver of statutory or constitutional right. Here are all the different settings in which we've done this. If that's true, how does your argument actually follow that this is a focus on arbitration? Well, frankly, Your Honor, the reach that the New Jersey Supreme Court had to go to to come to that list of cases demonstrates that this rule applies primarily to arbitration clauses and not to contracts in general. And, in fact, the court stated several times its opinion that it applies only to clauses that are waiver of rights clauses. That alone takes it out of the savings clause in Section 2 because it doesn't apply to contracts in general. It only applies to waiver of rights clauses. Doesn't Concepcion itself say that that's a legitimate thing, that you can, here's paragraph or footnote 6 in Concepcion. Of course, states remain free to take steps addressing the concerns that attend contracts of adhesion, for example, requiring class action waiver provisions in adhesive contracts to be highlighted. Such steps cannot, however, conflict with the FAA. Okay, so it looks like the Supreme Court of the United States looked exactly at the argument you're making right now and rejected it and said states are free to say when you're dealing with contracts of adhesion, for example, you can require there to be some highlighting, some emphasis required. What's wrong with the New Jersey Supreme Court's approach in following that footnote 6 from the U.S. Supreme Court? Well, first of all, that footnote 6 is talking about contracts of adhesion. The at-a-lease rule doesn't depend on contracts of adhesion or the adhesive nature of the contract at all. We're talking about at-a-lease was a contract for debt-relief services, much in the nature of what musical endowments offered. And there were a series of, at least according to the New Jersey Supreme Court, contracts given to this woman. Okay, so it looked very much like they were speaking in the context of contract of adhesion, consumer contract of adhesion with an arbitration clause. So doesn't that kind of put it right in footnote 6? That was the factual context of at-a-lease, but the reasoning of at-a-lease is not dependent upon it being a contract of adhesion. It simply says any time you have a waiver of rights, we're going to apply this heightened standard of showing a particular, the court would take particular care to make sure that there was a clear mutual understanding. And that applies in any case where there's a waiver of rights, not merely arbitration cases. And I would suggest, Your Honor, that there's two reasons why that does not take this case outside of the bar of conception. And that first is that the waiver of rights clauses is going to have a disparate impact on arbitration. So that's a key question. Is that the right test, though? Because it also would seem that Concepcion says the real touchstone is not disparate impact. It's whether it goes to the fundamental attributes of arbitration. Why isn't that the test? That's the next point, is because in the words of Justice Scalia, it draws its meaning from the fact that it's an arbitration clause which waives the right to go to court. And if this doctrine of requiring a heightened review of waiver of rights clauses draws its meaning from the fact that it's a waiver of the right to go to court, i.e. arbitration, then that brings it within the bar of the FAA. You say a heightened review, but what the New Jersey Supreme Court says is, we're going to give this the same review that, not special in arbitration cases, but the same review in all cases where there is a waiver of statutory and constitutional rights. If they're giving the same review and the demand is for clarity and added clarity, and indeed there are plenty of contracts, form contracts out there, the form contract in Concepcion, the form contract in CompuCredit, those have exactly the kind of language the Supreme Court of New Jersey seems to be saying ought to be in these clauses. So it's not like they're asking for something novel or new. Your argument seems to be pinned on the idea that this is a dramatic heightening, but there are plenty of clauses out there that do it already. Why shouldn't your client be required to do the same? Well, certainly there are clauses out there that meet the Attlee standard where you have to give a one or two sentence primer on what arbitration means, and that you're waiving your right to go to a court and go to a jury and whatnot. But our argument is that one or two sentence primer, and requiring that one or two sentence primer is a violation of Concepcion. Certainly people can do it if they wish, but it's not required in order to make that arbitration clause enforceable. Well, not in general, but New Jersey says it is. And again, that's singling out our arbitration clauses. The question I don't think is, is it the burden on you to show why New Jersey can't say that that's required? Yes, Your Honor. And again, like I say, A, because of the disparate impact, and B, because the entire meaning of this requirement comes from the fact that it's arbitration. Attlee's itself said that waiving the right to go to court is an essential attribute of arbitration. And because that essential attribute is what triggers this rule, means that it draws its meaning from the fact that it's an arbitration clause, and therefore violates Concepcion. That's an interesting argument, because what you're really saying is no longer is the concern with putting arbitration on a level playing field, but now arbitration is special. Because arbitration has as an attribute, you don't go to court. You can never require somebody to say you can't go, specifically you're not going to be allowed to go to court, because that's an attribute. Doesn't that kind of turn on its head the entire body of law that says, treat arbitration clause like other clauses? You seem to be saying, no, arbitration is special because of its attributes. You can't require us to highlight that. Actually, Your Honor, by invalidating this rule, you are putting arbitration on the same level as any other clause. As this Court said in the Morales case and the Seuss case, which we cited in the briefs, all that's required, even in an arbitration clause, is to show that the parties intended to be bound by the agreement, and there was no fraud or duress, no heightened standard of understanding or knowing the ramifications of what the clause says. And so that's the level playing field. Adding the additional is unleveling the playing field. Thank you. We'll have you back on rebuttal. Mr. Pinto. Good morning. May it please the Court. When you were here before, the Court sent this back for discovery to determine just what happened, and in particular focus on the header notations on the documents that were emailed. Now it's been established that this AADS was not sent to the plaintiff in this email. The defendant now claims that, well, we sent it separately. Tell you what, let's get past the fact thing for a minute, okay? Let's talk about Attlees, which is what really turned the district court. Can I go back to the fact? It seems to me you're making the same misstep that your friend on the other side is making, which is you're going to characterize the evidence and try to explain to us why you win, which I'm suggesting should be done in the district court on remand. Why shouldn't we send it back for a full and final determination on that issue? Because I assume you would agree that if it's finally determined by the district court that your client didn't get it, then your client can't be required to go to arbitration. It has been determined by district court. There's no way the district court could have ruled that this agreement was not properly incorporated if it didn't find that she didn't get it either contemporaneous with or before she signed the SPAA. Didn't the district court hold that there remained disputed issues? As I read the opinion, the holding is there are disputed issues of fact on this, despite the seven months of discovery and oral argument, but the court then proceeded to make the alternative legal holding under Attlees, which we'll get to. Am I incorrect on that? No. I read the district court opinion to say it's the burden of the defendants to convince the court that there's a material issue of fact in dispute. When you look at what they relied upon to establish a material issue of disputed fact, the court said that doesn't establish a material issue of disputed fact. What they're relying on is that they have a witness who did not work there at the time that this transaction took place, who looked at a computer note that she didn't devise, that she didn't put into the computer system. Let me just read you something, okay? Quote, genuine issues of fact clearly persist concerning whether plaintiff had the AABS at the time she signed the SPAA. Are we just supposed to think that Chief Judge Samandla didn't know what he was talking about? I'm not sure why you think you're going to make headway. It doesn't matter if you are confused with why he said it. He did say it. He did say it, but on the other hand, how could he say that it was not properly incorporated if he didn't find that she didn't have it at the time it wasn't available to her? Because he has to make that finding in order to back his incorporation argument. After that statement, essentially everything else is dicta, right? Because once there's a statement that there are genuine disputes that persist, and he uses persist in the opinion, then everything else is for you gravy, but for us it doesn't get us any further than that. You're right, Judge. I can't argue with the black and white words that he used in his opinion. Indeed. So why don't we move on? Let's move on. All right. So let's talk about Attlee's. Now, why don't you start with where Mr. Pelzer stopped, which is his assertion that arbitration by its very nature involves the waiver of a right to go to court. Therefore, ipso facto, every time you have an arbitration clause, if you have a rule like Attlee's lays out, you are targeting arbitration unfairly, and that is in violation of conception. Go ahead and meet that argument head on. Well, if you're talking about what Attlee's talked about was whether there was an assent or consent to arbitration. And in their minds, whether there was consent to an arbitration clause had to do with whether there's an understanding of what an arbitration clause is. And they said in order to, and not just an arbitration clause, but if you're going to waive the statutory constitutional rights, you have to understand that you're doing it because those rights you would be able to assert in court, and you can't assert them in an arbitration. These statutory rights, the constitutional right to a trial is a different story. So I think, and I argued in the brief, that it grabbed onto footnote six in conception and said you at the very least have to have some words that say you're waiving your right to go to court or you're waiving your statutory rights. And if they're there, then there's no question there was an assent to arbitrate. And it's not disproportionate. Don't we want to run the risk of sort of a reductio ad absurdum though, because the next case is going to be, well, I know that it said you go to arbitration and that means you don't go to court, but they didn't tell me I can't go to the local justice of the peace or they didn't tell me I could go to federal court, and it just becomes this reductio. How do we know that the right answer is, you're saying it's not enough for the agreement to say you will go to arbitrate in Tulsa, Oklahoma, you're saying, or at least is saying, it needs to be more than that. It needs to also say, and by the way, this means you can't go to court. What's to prevent the New Jersey Supreme Court from saying, well, we said that, but now we're seeing some other cases and we have to add all these other things. Well, because they're limited by what they can do in that regard by conception, and in footnote 6, they can require things to be highlighted. But doctor's associates says no, right? Does footnote 6 impliantly overrule doctor's associates? In the Montana statute in doctor's associates, I think you said you had to put everything in all capital letters, right? Now footnote 6 says you can require highlighting. Is there a material legal distinction between requiring something to be placed in capital letters and something be highlighted? No. Since the Supreme Court, I guess if you're saying that the Supreme Court has impliedly overruled footnote 6 in conception, it would be very difficult to believe that if the Supreme Court is going to overrule itself, it's not going to do it by implication. By footnote, without even mentioning doctor's associates, right? Yeah. So you've just made the argument that footnote 6 does not run afoul of doctor's associates, and so you haven't really answered the question about there being a tension between those two, Mr. Pinto. Doctor's associates precedes conception. So the question is, having said you can't, the Montana statute can't work, the Montana decision can't work from doctor's associates, how do you square that with footnote 6? It sounded like you just said, well, they wouldn't overrule themselves in a footnote. That undercuts the force and impact of footnote 6. That's not what I meant. What I meant was that just they didn't accept the fact that the highlighting in doctor's associates was sufficient, that that highlighting ran afoul of it. That doesn't mean all highlighting is going to run afoul of it. Some highlighting will work and some won't. That's interesting. How about our opinion in Morales v. Sun Constructors? They, on the other side here, point to that where we said you can't have a heightened knowing and voluntary stand for arbitration agreements, and that that's what this, in effect, is. What's your response to that? Well, my response is, this response to Adam's was that this doesn't just apply to arbitration agreements. It's not a heightened standard. I think Adam's piece was saying that it goes to consent and it's not a knowing. See, a waiver is a defense, right? But the issue is consent. It's not a defense. A waiver is an affirmative defense. You have to plead it. But here, Adam's is saying this is not a waiver. This is not the knowing and voluntary waiver sort of argument that you get when there's a defense. We're going to the very basis of whether there was an agreement to arbitrate. And in order to have that agreement to arbitrate, some language has to be in there telling you what it is. It's not a heightened standard. It's a consent standard. That's the way I read Adam's. So the factors in Morales that they were looking at, they probably listed 15 or maybe 10 factors that you would look at in assessing whether there's a knowing or voluntary waiver. The only thing Adam's required is that there be a very simple statement. So it's not a knowing. It's not a heightened standard. It's a very simple standard that applies to any assent to a contract. Let's talk about unconscionability for a moment because that was the third thing that the district court addressed, right? The court seemed to be saying that this thing was substantively unconscionable, and that was enough to throw it out. But do you have any authority for the proposition that under New Jersey law, if something is substantively unconscionable but not procedurally unconscionable or vice versa, that that's enough to knock a contract provision out? In other words, does New Jersey law require that you have both substantive unconscionability and procedural unconscionability? No, it's a sliding scale. I think I outlined the cases in my brief of the sliding scale. I understand that. What I'm trying to get you to address, though, is does the sliding scale mean you can slide all the way to a point where there's nothing for one side? I mean, a sliding scale implies that you've got some of each, and the mix of each may not be that important. But what about where you've got some of one and nothing of the other? Does New Jersey law let you declare something unconscionable when that happens? Yes. What's your case for that? Well, there's no case that says that. To me, it's just a reasonable conclusion from the case law that provides a sliding scale. Those cases don't say you have to have a de minimis amount of procedural unconscionability and a great amount of substantive unconscionability to find that it's unconscionable. The scale can slide to zero, and that's precisely the question. If the scales slide to zero, that's a problem. You say the cases don't say that. Here's something from the New Jersey Superior Court last year, Jiang v. Building Materials. Under the sliding scale approach, overall unconscionability may be found if there is a gross level in one category but only a lesser level in the other. Lesser implies there's something. It means there is something. If that case means that you can't say that there's no procedural unconscionability, if you take lesser, it means there has to be something. How else would you take it? That's my question. When you talk about a sliding scale, help me understand how it can mean something other than that there's something on both sides of the scale, not that there's one side of the scale and nothing at all on the other. Explain it. The only way I can explain it is that the scale goes to zero. Okay. If there's one atom's worth of procedural unconscionability, is that enough? The court should be free in their discretion to weigh the seriousness of, if there's such a serious substantive unconscionability, but maybe just hardly any or none at all procedural unconscionability, they should still have the discretion to say and the law should say then the substantive unconscionability is so severe that it's unconscionable. Does Rodriguez give you the framework to answer Judge Jordan's question? I'm sorry, Your Honor. Which case did you ask? Rodriguez v. Ramar, Furniture. Never mind. All right. Okay. Well, thanks very much for your argument, Mr. Pinto. We'll go ahead and hear from Mr. Pelzer. Thank you, Your Honor. Thank you, Your Honor. Getting back to the at-a-lease point, one aspect of at-a-lease that this court should consider is that it actually turns the rule of interpretation for arbitration clauses upside down. This court in Kahn v. Dell repeated what is a virtually universal admonition that ambiguities in arbitration clauses should be interpreted in favor of finding arbitration and arbitrability. That's as to scope, though, isn't it? That doesn't speak to whether formation at all. Do you have any case at all where that language is used and it's not talking about scope but it's talking about formation? It's generally talking about formation, Your Honor, and usually in that context it's a... Which makes sense because Section 4, the language of Section 4, is pretty precise in saying that everything goes to arbitration unless the question of arbitrability itself is an issue, in which case that's a matter for the court to deal with. That seems to be the import of Section 4, so the textual look at the statute doesn't seem to support the assertion that every ambiguity goes to arbitration, weighs on arbitration side, right? Am I wrong about the textual implications of Section 4? Certainly the language in Kahn v. Dell wasn't limited to the arbitrability issue, but it was in an arbitrability context. There's no doubt about that. I'm talking about... Yeah, but the text of Section 4, that's the textual proposition I put before you. Do you have any case or argument that undermines that textual view of Section 4? Meaning that... Meaning that Section 4 seems to say pretty clearly you're going to refer this to arbitration unless the issue of arbitrability itself is the thing that's an issue, right? Right. If you just looked at that alone, how would you draw the conclusion that, oh, any ambiguity goes to arbitration? On the contrary, it seems to say if there's a question, if there's an issue, which is the word Section 4 uses, that doesn't go to arbitration. I would simply suggest to you, Your Honor, that the language in all the cases is broad and it doesn't limit itself to scope of the arbitration clause and whether the particular issues within the arbitration clause speaks to ambiguity in arbitration clauses generally, ambiguity in the question of whether an issue was arbitrable. And so whether the language is too loose and should be restricted by looking at Section 4 and those opinions were overbroad or should be restrained by their context, that's another point. And that may be the issue. But getting back to the underlying problem with Adelaide's is that Adelaide's is drawing the trigger for its rule, the impetus for its rule, from what Adelaide's concedes is a fundamental aspect of arbitration and that's the waiver of the right to go to court. And for that reason, because it draws its meaning from an essential... Does it only apply to the waiver to go to court, though? Or does it apply to other waivers? It doesn't. If you look at those ten cases that the New Jersey Supreme Court drew from to try to establish that this is some kind of a universal rule, you'll find that only two of those cases were actually contract cases. The others were whether there was a waiver by action as opposed to a waiver by contract. So the question of the clarity of the contract wasn't an issue at all. In the two cases that were contract cases, the court simply spoke in terms of a higher scrutiny but then did not invalidate the clause. I see that I'm out of time. I ask that you reverse and remand either to compel arbitration or for an evidentiary hearing. Okay. Thanks very much, Mr. Pelzer. We thank the parties for their argument. We've got the case under advisement. We'll call our next case.